<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

<table>
<tr><td>

LESTER J. BROWN, JR.,

         Plaintiff,

v.

APEX ASSET MANAGEMENT, LLC,

         Defendant.

</td><td>

HONORABLE KAREN M. WILLIAMS


Civil Action
No. 23-3749 (KMW-EAP)


**OPINION**

</td></tr>
</table>

APPEARANCES:

LESTER J. BROWN, JR.
324A WILLOW TURN
MT. LAUREL, NJ 08054

     *Plaintiff appearing pro se*

ANDREW MICHAEL SCHWARTZ, ESQ.
MESSER STRICKLER BURNETTE, LTD
935 E. LANCASTER AVE., #1003
DOWNINGTOWN, PA 19335

     *Counsel for Defendant Apex Asset Management, LLC*

**WILLIAMS, District Judge:**

## I.     INTRODUCTION

Plaintiff Lester J. Brown, Jr., ("Plaintiff"), brings this action against Defendant Apex Asset Management, LLC, ("Defendant"), alleging that Defendant violated the Fair Debt Collection Practices Act, § 1692c(c), when Defendant sent Plaintiff a debt verification letter after Plaintiff demanded that all collection communications cease regarding an alleged debt, causing Plaintiff to suffer from "anger, anxiety, decreased ability to focus on task while at work, frustration, amongst other negative emotions". *See* Amend. Comp. ¶¶ 7-11.

This matter comes before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, (ECF No. 22). Plaintiff opposed the motion, (ECF No. 24), and Defendant replied, (ECF No. 26). For the reasons that follow, the Court will **GRANT** Defendant's Motion to Dismiss, (ECF No. 22).[1]

## II.    BACKGROUND

On or about May 1, 2023, Plaintiff received a letter from Defendant attempting to collect a debt allegedly incurred by Plaintiff. *See* Amend. Comp. ¶ 7; Def. Motion to Dismiss at Ex. A. On or about May 8, 2023, Plaintiff wrote a letter to Defendant stating: "Pursuant to 15 USC 1692c(c) I am notifying you in writing that I refuse to pay this alleged debt, and I am demanding that you cease all forms of communication with me through any and all mediums. I do not have the income at this time, therefore I refuse to pay the debt." *Id.* ¶ 8; Def. Motion to Dismiss at Ex. B. On or about May 26, 2023, Defendant sent a letter stating:

> Enclosed is the verification of debt that you requested from our office regarding the . . . account . . . Please feel free to review the documentation and then return a call to our office at your earliest convenience.  You can reach one of our representatives locally at

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

(717) 519-1770 or toll free at (888) 592-2144. If you would like to
pay your account online, you may do so at www.apexasset.com and
click the make a payment icon. Thank you for your prompt attention
to this matter.
[. . .]
This communication is from a debt collector. This is an attempt to
collect a debt and any information obtained will be used for that
purpose.

*Id.* ¶ 10; Def. Motion to Dismiss at Ex. C. Plaintiff asserts that the receipt of this letter caused him

"actual damages" such as "invasion of privacy, intrusion upon seclusion and . . . anger, anxiety,

decreased ability to focus on task while at work, frustration, amongst other negative emotions."

*Id.* ¶ 11 (underline in original).

On July 12, 2023, Plaintiff filed a Complaint in this Court. (ECF No. 1). On September

22, 2023, Plaintiff filed a Motion to Amend his Complaint, which the Court granted on October

30, 2023. (ECF Nos. 15, 18). On November 9, 2023, Defendant filed the instant Motion to

Dismiss. (ECF No. 22). On November 15, 2023, Plaintiff opposed and on November 27, 2023,

Defendant replied. (ECF Nos. 24, 26). Thus, Defendant's Motion to Dismiss is ripe for

adjudication.

**III.   LEGAL STANDARD**

**A. Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)")**

Under Rule 12(b)(1), a defendant may seek dismissal of a complaint based on a court's

lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion

is the court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d

Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized

by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender*

*v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 5 U.S. 137, 1 Cranch (5 U.S.) 137, 173-180 (1803)).

When considering a Rule 12(b)(1) motion challenging subject matter jurisdiction, "[a] district court has to first determine . . . whether [the] motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). As the Third Circuit explained in *Constitution Part of Pennsylvania v. Aichele*:

A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.

*Id.* at 358 (citing *Mortensen*, 549 F.2d at 891). Here, Defendant asserts it is facially attacking the Amended Complaint. *See* Def. Motion to Dismiss at 5.

"In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* (quoting *Schering*, 678 F.3d at 243). Therefore, "a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Id.* (citation omitted).

4

### B. Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

Further, beyond the allegations in the complaint, a district court my consider matters of public record, orders, and exhibits attached to the complaint. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, a district court may

consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 19997)). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt*, 770 F.3d at 249. Here, because the letters sent between Plaintiff and Defendant regarding an alleged debt are foundational to the Parties' arguments and are the basis of Plaintiff's claims, they may be considered without converting the instant motion to dismiss to one for summary judgment.

## IV.   DISCUSSION

The Court must first address the issue of standing. "Federal courts are courts of limited jurisdiction," and thus "[s]ince subject matter jurisdiction is a threshold requirement for consideration of the sufficiency of the underlying claims, the Court's analysis [must] begin[] here." *Foley v. Medicredit, Inc.*, No. 21-19764, 2022 WL 3020129 at \*1 (D.N.J. Jul. 29, 2022) (internal citations omitted). "The doctrine of standing ensures that courts do not overstep their role by 'limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Barclift v. Keystone Credit Servs. LLC*, 93 F.4th 136, 141 (3d Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). For a plaintiff to have standing to bring suit in federal court, there must be: 1) an injury in fact that is concrete and particularized, 2) a causal connection between the injury and the challenged conduct, and 3) a likelihood that the injury will be redressed by a favorable judicial decision. *Id.* (citation omitted).

Only the first element is contested here: whether Defendant's alleged violation of the Fair Debt Collection Practices Act ("FDCPA") resulted in a concrete and particularized injury to Plaintiff.

The FDCPA prohibits debt collectors from engaging in certain practices that are considered abusive or unfair. *Rabinowitz v. Alltran Fin. LP*, No. 21-12756, 2022 WL 16362460 at *3 (D.N.J. Oct. 25, 2022). To assert a FDCPA claim, a plaintiff must allege that: 1) he is a consumer pursuant to the statute, 2) the defendant is a debt collector pursuant to the statute, 3) the defendant's challenged practice involves an attempt to collect a debt as defined by the statute, and 4) the defendant violated a provision of the FDCPA in its attempt to collect. *Id.* at *4. Here, the only contested element is whether Defendant violated 15 U.S.C. § 1692c(c), ("§ 1692c(c)"), of the FDCPA when attempting to collect a debt from Plaintiff.

§ 1692c(c) provides in pertinent part:

> Communication in connection with debt collection[:] Ceasing communication.
> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c).

The Supreme Court has recently provided further clarification on the issue of standing with the proliferation of litigation surrounding statutory violations, specifically on pleading intangible harm to assert a concrete injury. *Barclift*, 93 F.4th at 142. Although *TransUnion v. Ramirez* discusses a different statute than the one at bar, (the Fair Credit Reporting Act), it directly addresses the standing issues relating to Congress' creation of statutory causes of action:

>[T]he Court explained that intangible harms can give rise to concrete injuries when they bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts, such as reputational harms, disclosure of private information, and intrusion upon seclusion. But even though this inquiry requires the identification of a close historical or common-law analogue for the[] asserted injury, the Court clarified that there need not be an exact duplicate. And while Congress may elevate certain harms to actionable legal status through legislation, the Court stressed that Congress's mere creation of a statutory cause of action does not automatically satisf[y] the injury-in-fact requirement.

*Barclift*, 93 F.4th at 142 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-26 (2021)) (internal citations and quotations omitted). More importantly, *TransUnion* indicated that the point of reference that a court should focus upon when determining standing is the harm being asserted, which is precisely the standard the Third Circuit explicitly adopted in *Barclift*.[2] Thus, to determine the "concreteness" of an intangible injury, a court is to assess whether the asserted harm has a "close relationship" to a harm that has been traditionally recognized as a basis for a lawsuit in American courts. *Id.* at 145.

Here, Plaintiff specifically asserts an invasion of privacy and intrusion into his seclusion, which is a claim that is traditionally cognizable in American courts. However, the Third Circuit's analysis as discussed in *Barclift* requires this Court to analyze the kind of *harms* related to the tort alleged.[3] *Id.* at 144-45 (holding the method of comparing "the kind of harm a plaintiff alleges with kind of harm caused by the comparator tort [is] more faithful to *TransUnion*."). The Court notes Plaintiff asserts the following harm: "anger, anxiety, decreased ability to focus on task while at

---

[2] *See Barclift*, 93 F.4th at 142-46 for a discussion regarding an in depth overview of the Third Circuit's analysis of *TransUnion* as applied in FDCPA cases.

[3] For example, *Barclift* emphasized *TransUnion's* distinguishment of the harms when evaluating standing, noting that the harm of embarrassment from a non-public disclosure of a person's debt to internal employees at a given company was not "of the same character" of the kind of harm from public disclosure of private facts, which is concerned with highly offensive information becoming wildly known, causing harm in the form of humiliation. *Barclift*, 93 F4th at 146-47. The Court notes that plaintiff in *Barclift* wrote of similar harms as Plaintiff here, such as anxiety and stress, which the dissent found as sufficient and of the same character as privacy harms traditionally associated with public disclosure, but the majority found wanting. The majority opinion is what controls the analysis here.

work, frustration, amongst other negative emotions."[4]  The Court finds that Plaintiff does not assert the kind of harm that is required to assert a concrete injury under the harm of intrusion upon seclusion.  The kind of harm that the tort of intrusion upon seclusion applies liability to is a harm that substantially impacts a person's life.  Plaintiff's Amended Complaint does not provide facts or details to demonstrate the same kind of harm.

Intrusion upon seclusion is a recognized tort in New Jersey which is defined by the Second Restatement of Torts, requiring that a plaintiff show (1) an intentional intrusion (2) upon the seclusion of another that is (3) highly offensive to a reasonable person.  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 293 (3d Cir. 2016) (citing *Hennessey v. Costal Eagle Point Oil Co.*, 129 N.J. 81, 94-95 (N.J. 1992)).  The conduct must be so offensive that a "reasonable man would strongly object," and is intended to be a "high threshold" to assert a cause of action thereunder.  *Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300, 316-17 (N.J. 2010).  For example, conduct that results in "serious annoyance" is not sufficient.  Restatement (Second) of Torts § 652B (1977) at illustration 8 ("A, a landlord, calls upon B, his tenant, at nine o'clock on Sunday morning, to demand payment of the rent, although he knows that B is not ready to pay it and that B objects to such a visit on Sunday.  B is seriously annoyed.  This is not an invasion of B's privacy.").  Rather, the complained of conduct must cause harm that "becomes a substantial burden to [a person's] existence."  Restatement (Second) of Torts § 652B (1977) at d. ("there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt.  It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.").

---

[4] Common law recognizes four torts relating to invasions of privacy: appropriation of name or likeness, unreasonable publicity given to another's private life, false light, and intrusion upon seclusion.  *Barclift*, 93 F.4th at 145.

Similarly, the FDCPA seeks to ban conduct that is considered "abusive," that substantially impacts a person's life: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692, Congressional findings and declaration of purpose, (a) Abusive practices. Plaintiff's harms simply do not reflect the kind of harm that the FDCPA was enacted to provide redress for. Thus, the Court finds, based on the instructions of *Barclift*, Plaintiff does not have standing to bring this case.

However, even if the Court were to find Plaintiff had standing, his claim would be dismissed. The harm that Plaintiff sustained and the quality of Defendant's conduct are not sufficient to state a claim under the FDCPA.

Plaintiff asserts that Defendant violated § 1692c(c) when Defendant sent Plaintiff a single letter validating the debt after Plaintiff provided a written request to Defendant to cease all communications. Defendant asserts that its communication falls into one of § 1692c(c)'s exceptions, and that a debt verification letter was required pursuant to 15 U.S.C. § 1692g(b), ("§ 1692g(b)").

§ 1692c(c) requires a debt collector to cease communication with a debtor if that consumer states in writing that they refuse to pay the debt, or that the consumer wishes the debt collector to cease communications. *Id.* However, there are three exceptions: a debt collector is permitted to (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

The debt validation provisions pursuant to § 1692g are intended to "guarantee that consumers would receive adequate notice of their rights under the law." § 1692g(b) requires that if a consumer notifies the debt collector, in writing, within the thirty-day period that the in question debt is disputed, the debt collector must cease collection action until the debt collector obtains verification of the debt and mail such verification to the consumer. *See* 15 U.S.C. § 1692g(b).

Here, on May 1, 2023, Defendant sent a notice seeking to collect a debt from Plaintiff, which clearly stated that "[i]f you write to us by June 10, 2023, we must stop collection on any amount you dispute until we send you information that shows you owe the debt." Def. Motion to Dismiss at Ex. A. On May 5, 2023, Plaintiff sent the following in writing to Defendant: "Pursuant to 15 USC 1692c(c) I am notifying you in writing that I refuse to pay this alleged debt, and I am demanding that you cease all forms of communication with me through any and all mediums. I do not have the income at this time, therefore I refuse to pay the debt." Def. Motion to Dismiss at Ex. B (emphasis added). While Plaintiff argues that he did not request a verification of the debt, by referring to the debt as "alleged," Plaintiff utilized inherently litigious terminology. Given that this notice was received within the 30 day window, and due to the fact that Defendant would not be able to pursue the debt due to the invocation of the requirements of § 1692g(b) until debt verification was sent, Defendant would have to provide the verification to Plaintiff by mail if it were to continue its attempts to recoup the debt.

The Supreme Court has noted that "it would be odd if the [FDCPA] empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt," and thus work against the fundamental purposes of the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995). Essentially, there is an implicit "exception" to § 1692c(c)'s prohibition relating to contacting a consumer when such

11

communications preserve a creditor's judicial remedies, which is precisely the action Defendant took in this case. *Grooms v. Sklar Law, LLC*, No. 23-1544, 2023 WL 3362582 at *3 (E.D. Pa. May 10, 2023). Here, Defendant's verification letter falls into that implicit exception: Defendant sent one, non-threatening letter that verified the debt in the manner required pursuant § 1692g(b), in order to preserve its ability to recover the debt. *See* Def. Motion to Dismiss at Ex. C. If the Court were to find that such verification letters were prohibited, it would force debt collectors "to file suit in order to advance efforts to resolve the debt" and comply with other provisions of the law—both results would be "clearly at odds with the language and purpose of the FDCPA." *Miller v. Doyle & Hoefs LLC*, No. 23-4924, 2024 WL 493886 at *6 (E.D. Pa. Feb. 7, 2024) (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008)).

Therefore, Defendant did not violate § 1692c(c) when it sent Plaintiff the debt verification letter required by § 1692g(b).

## V.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, (ECF No. 22), will be **GRANTED**. An order consistent with this Opinion will be entered.

July ___, 2024

KAREN M. WILLIAMS, U.S.D.J.